**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Blair Deshayes,** | : | **Case No. 2:24-cv-04160** |
| **Plaintiff,** | : | |
| **v.** | : | **Judge Graham** |
| **LDM Retail Associates, Inc.,** | : | **Magistrate Judge Jolson** |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court upon a motion for summary judgment filed by Defendant LDM Retail Associates, Inc. ("LDM"). Doc. 19. Additionally, LDM moves to strike portions of the affidavit of Plaintiff Blair Deshayes ("Deshayes") filed in support of her brief opposing summary judgment. Doc. 28. These matters are fully briefed and ripe for decision. For the reasons that follow, the Court **GRANTS** LDM's motion to strike and **GRANTS** LDM's motion for summary judgment.

**Background**

Defendant LDM, commonly known as "Lion's Den," is a national retail chain which sells adult entertainment products. In September 2022, LDM hired Deshayes as a part-time Retail Sales Associate at a Lion's Den store located in Dublin, Ohio. Deshayes is a transgender woman and openly discussed that fact during her hiring process.

In her role as a Retail Sales Associate, Deshayes was responsible for assisting customers, checking them out at the register, and stocking and cleaning the store. Deshayes initially received positive feedback for her job performance. In early

January 2023, Deshayes raised concerns[1] about offensive language on the covers of some DVDs sold at the store containing terms such as "t-girl," "transsexual," and "trannies." She first raised this issue to assistant store manager Ian Billig ("Billig") before "escalat[ing]" (doc. 22, # 446) it to the store manager, Audry Elrod ("Elrod"), and later to the district manager, Kai Aleckson ("Aleckson"), the individual who interviewed and hired Deshayes. Ultimately, LDM management declined to take any action with regard to the DVDs.

Shortly after Deshayes raised the issue with the DVDs, she received her first disciplinary warning. On January 11, 2023, Elrod issued a documented verbal warning to Deshayes for attendance after Deshayes had called off for scheduled shifts four (4) times in the previous two (2) months, per company policy. *See* doc. 19-4, # 254 (LDM policy calling for verbal warning after four (4) occurrences of absenteeism). On January 28, 2023, Deshayes was given a documented verbal warning for excessive phone use during work hours. On the same day, she was given a written warning based on apparent poor customer service, as reflected in two 1-star Google reviews from customers complaining about their experiences at the store during Deshayes' shifts.

During a shift on February 25, 2023, Deshayes applied a coupon code to a majority of the customer transactions. LDM contends that this was a "substantial

[1] The parties diverge in their characterization of how this issue was initially raised. Deshayes says she "made a report" (doc. 22, # 445) about the DVD covers, while LDM points to deposition testimony in which Deshayes claims she "wasn't even to the point of making a complaint" (doc. 19, # 167 (quoting Plaintiff Dep. 121:1-12). This is discussed further in § III, *sub*.

spike" (doc. 19, # 169) relative to typical coupon use at the store, leading management to review store surveillance footage, whereupon they discovered that most of the customers did not present the coupon to Deshayes, in violation of store policy for that discount. Additional investigation by LDM management revealed that Deshayes applied the coupon code far more than the other retail sales associates. Under store policy, Deshayes' misuse of the coupon code constituted theft. On March 6, 2023, Deshayes was terminated by LDM.

Deshayes filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and she received her Right to Sue letter from the EEOC on August 22, 2024. Deshayes initiated this action within 90 days of the issuance of the Right to Sue letter. In Count I of her Complaint, Deshayes alleges "Gender & Gender Identity Discrimination in Violation of Title VII." Doc. 1, # 12. In Count II, Deshayes alleges "Retaliation in Violation of Title VII." *Id.* at # 13.

**LDM's Motion for Summary Judgment & Motion to Strike**

LDM seeks summary judgment on both Counts of the Complaint. As to the discrimination claim, LDM argues that Deshayes cannot establish a prima facie case because she lacks proper comparators, and that, regardless, Deshayes was terminated for a legitimate reason that she cannot show to be pretext. As to the retaliation claim, LDM argues that Deshayes' complaints about DVD titles are not protected conduct, and, regardless, Deshayes can show no causal connection between her complaints and her termination.

Deshayes' response in opposition to the motion for summary judgment relies heavily on her own affidavit attached to the filing.[2] In said affidavit, Deshayes makes certain allegations that are conspicuously unaddressed in LDM's motion. Per LDM's motion to strike, that's because those allegations are also conspicuously absent from the rest of the record, and they directly conflict with Deshayes' deposition testimony. *See* doc. 25. Deshayes disputes this characterization, of course, and describes the allegations in the affidavit as merely supplemental. *See* doc. 27.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty*

[2] Record citations in Deshayes' memorandum are contained in footnotes; of 111 total footnotes, the Court counts at least 36 citations to Deshayes' 24-paragraph affidavit.

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## DISCUSSION

The Court will first address LDM's motion to strike Deshayes' affidavit before addressing the motion for summary judgment. For the reasons that follow, the Court will grant both motions.

### I. The Affidavit of Plaintiff Deshayes is Stricken, in Part, Pursuant to the Sham Affidavit Doctrine.

In paragraphs 7 through 14 of Deshayes' affidavit, she raises a multitude of new allegations which, if accepted, would create factual disputes precluding summary judgment. Because these new allegations directly contradict her prior deposition testimony, and because she has failed to establish a persuasive justification for the contradiction, the Court will grant LDM's motion to strike paragraphs 7 through 14.

"Under the sham affidavit doctrine, after a motion for summary judgment has been made, a party may not file an affidavit that contradicts his earlier sworn testimony." *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). Such affidavits "should be stricken" (*id.*) when they directly contradict prior sworn testimony, "unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006).

In the instant case, Deshayes' affidavit makes the following allegations, which are the subject of LDM's motion to strike:

> 7. During my employment at LDM, customers propositioned me for sexual favors. This included some regular customers who came in each week to ask me repeatedly for sexual favors after I turned them down.

> 8. During my employment at LDM, customers threatened me with violence.
>
> 9. During my employment at LDM, customers attempted to lure me out from behind the cashier desk to grope me.
>
> 10. During my employment at LDM, customers groped me.
>
> 11. During my employment at LDM, one group of customers hit my car with their car after I turned down their sexual advances.
>
> 12. During my employment at LDM, customers harassed me based on my gender identity multiple times a week.
>
> 13. I complained to my store manager, Audrey Elrod, multiple times about being harassed by customers.
>
> 14. I complained to my assistant store manager, Ian Billig, multiple times about being harassed by customers.

Doc. 22-1, # 467-68. LDM contends that these allegations appear nowhere else in the record, and thus directly contradict Deshayes' prior sworn statements that her Complaint—which says nothing of the pervasive harassment from customers described above—stated the "sum total" of her claims. Doc. 25, # 563 (quoting Deshayes Dep., 18:1-19:2).

Deshayes argues that her affidavit does not contradict her prior sworn statements but rather "supplements it with additional details about customer harassment that she was never specifically questioned about during her deposition." Doc. 27, # 619. She claims that, while she confirmed that her Complaint stated the sum total of her claims, "[that] general question did not specifically address customer

harassment incidents," and that, when she was asked at the end of the deposition if she had told her full story, she "carefully" stated she had "answered all your questions to the best of my ability." *Id.* In other words, her latter response was not meant to affirm that she had indeed told her full story but rather was a "carefully" (and ironically) worded non-response to the question asked. *Id.* But the suggestion that Deshayes "carefully" responded with a statement that would not be contradicted by later revelations also suggests that she *deliberately* withheld further allegations that were responsive to the question. If, as she contends, the questions at her deposition did not tend to elicit the information revealed for the first time in her affidavit, why would Deshayes need to be careful?

The starkest contradiction, as the Court sees it, is found in Deshayes' responses to interrogatories. Interrogatory No. 13 instructed Deshayes to "identify each and every complaint, whether formal or informal, internal or external, verbal or written, made by you concerning the terms, conditions, or circumstances of your employment with [LDM]." Doc. 28-1, # 639. Deshayes answered "See Plaintiff's Complaint,"[3] and, further, "on January 7, 2023, [Deshayes] spoke to her store's assistant manager, Ian Billig," and "[o]n January 11, 2023, she brought her concerns up at a store meeting with Kai Aleckson." *Id.* But in paragraphs 13 and 14 of her affidavit, Deshayes avers that she "complained… *multiple times*" to both Billig and Elrod[4] about customer

[3] The Complaint (the pleading) describes no customer harassment, and the only complaints "concerning the terms, conditions, or circumstances of [Deshayes'] employment" described therein are the January 7 and January 11 complaints reiterated in the interrogatory response. *See* doc. 1, doc.

[4] In support of her retaliation claim, Deshayes points to Elrod's deposition testimony in which Elrod refers to Deshayes' "complain[ing] about things all the time." Doc. 22-4, # 527. But it's

harassment. Doc. 22-1, # 468 (emphasis supplied). Furthermore, the January 7 and 11 complaints to which Deshayes referred in her interrogatory responses concerned the offensive DVD titles. In other words, Deshayes' affidavit patently contradicts her prior factual representations, and thus the Court finds that striking paragraphs 7 through 14 is the appropriate remedy against the unfair prejudice LDM would suffer if Deshayes were allowed to rely on a self-serving affidavit that contradicts the sworn statements fairly elicited by LDM.

## II. Deshayes Cannot Establish a Prima Facie Case of Title VII Discrimination.

Despite being hired as an openly transgender person, working alongside other non-cisgender colleagues, and a complete lack of *any* evidence suggesting that LDM's decisionmakers had discriminatory animus toward transgender women, Deshayes contends that her termination was not because of her undisputed violation of company policy, but because of her transgender identity. The Court is not persuaded.

"Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." *Solis v. Ohio State Univ. Wexner Med. Ctr.*, No. 24-3230, 2024 WL 4579501, at *2 (6th Cir. Oct. 25, 2024)

---

clear that this remark refers to Deshayes' issues with the DVD titles, with Elrod stating "she would bring that up all the time," (*id.*) as well as Deshayes' belief that negative customer reviews about her were due to her transgender identify. *See id*. ("You know, she would always—she would bring up, you know, the fact that, you know, she thought a lot of the customer complaints against her was because she's transgender, and there's no way for me to know."). In sum, nothing in Elrod's testimony lends any support to Deshayes' entirely new allegations of customers groping, propositioning, or threatening her with violence, nor her claim that she had complained of these circumstances to management.

(citing 42 U.S.C. § 2000e-2(a)(1)). Employees are empowered by the same statute with a cause of action against "discrete acts" of discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002).

When a claim is based on indirect evidence of discrimination, courts apply the burden-shifting, *McDonnell Douglas* framework to evaluate such claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). First, the Title VII plaintiff must establish a prima facie case of discrimination. *Id.* If successful, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the challenged act. *Id.* If the employer can articulate such a reason, the burden shifts back to the plaintiff to be "afforded a fair opportunity to show that [the employer's] stated reason" for the challenged act "was in fact pretext." *Id.* at 804.

To carry her initial burden of establishing a prima facie case, Deshayes must show (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly-situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). Of the above factors, the parties dispute only the last. In particular, LDM argues that Deshayes has failed to identify proper comparators for the purpose of the fourth element of the prima facie case, and the Court agrees.

Deshayes identified her fellow sales associates from her period of employment, Ian Seng and Ash Knapp, as potential comparators. *See* doc. 28-1, # 639. LDM notes that Seng and Knapp both identified as non-binary while working at Lion's Den, and LDM cites a dictionary definition of "transgender" which would appear to include "non-binary" individuals. Doc. 19, # 172 ("Merriam-Webster's Online Dictionary defines 'transgender' as 'someone whose gender identity differs from the sex the person was identified as having at birth.'"). Therefore, LDM contends that Seng and Knapp are "members of the same protected class" as Deshayes and thus "cannot serve as valid comparators as a matter of law." *Id.* at # 173. But Deshayes pushes back on this broad grouping, and the Court agrees with the theoretical proposition that discrimination against a transgender female is not disproven by tolerance of non-binary individuals. In simple terms, Deshayes is alleging gender discrimination, and her gender identity is appreciably distinct from that of her comparators.

However, LDM also points to the lack of evidence that Seng and Knapp were similarly situated insofar as they "engaged in similar coupon misuse or had comparable disciplinary histories" to Deshayes. *Id.* Indeed, Deshayes was asked in her deposition, "do you know whether [LDM] made any effort to determine whether [Seng and Knapp's] use of the coupons were appropriate or not for each one of them?" Doc. 19-5, # 293. She responded, "I don't." *Id.* And while Deshayes can observe that Seng and Knapp "were not disciplined…and not terminated as far as I'm aware" for using the coupons in the same manner, LDM is correct that "any meaningful comparison is impossible" without evidence that LDM was aware of Seng and Knapp

misusing the coupons like Deshayes. Deshayes cannot show that LDM unfairly targeted her by investigating her coupon usage, because it is undisputed that sales data showed Deshayes using the coupon in question far more often than her cited comparators. Doc. 19-5, # 354.

In sum, Deshayes lacks appropriate comparators needed to establish her prima facie case of discrimination. Without that, LDM is entitled to summary judgment on Deshayes' claim for Title VII discrimination.

### III. Deshayes Cannot Show That She Was Terminated in Retaliation for Protected Conduct.

To prevail on a claim of Title VII retaliation, Deshayes must show:

> (1) she engaged in protected activity, (2) the defendant was aware of the protected activity, (3) "the defendant took an action that was 'materially adverse' to the plaintiff," and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action.

*Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

LDM argues that Deshayes cannot establish that she was engaged in an activity protected by Title VII. Two types of activity fall under the protection of Title VII. First, "opposition" activity is protected when an employee "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). Second, "participation" activity is protected when an employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Id.*

In the instant case, Deshayes alleges that LDM retaliated against her for her complaints about the offensive language on DVD titles for sale in the store. Hence, this sounds in the "opposition" category of protected activity. Therefore, Deshayes would need to show she had a reasonable, good-faith belief that the sale or display of the offensive DVD titles constituted an unlawful employment practice.[5] *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–13 (6th Cir. 1989) ("A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful."). However, LDM argues that Deshayes' complaints did not rise to the level of protected conduct, and the Court agrees.

In her brief in opposition to summary judgment, Deshayes wraps her opposition to the DVD titles in the language of formality, claiming she "made a report" to Billig which she later "escalated" to Elrod. Doc. 22, # 445-46. But her deposition testimony undercuts the notion that her discussions about the DVD titles constituted sufficient opposition to an unlawful employment practice to invoke Title VII protections. *See Booker*, 879 F.2d at 1313 (holding letter with vague allegation of discrimination is insufficient to constitute opposition to an unlawful employment practice).

[5] Though the Court need not conclusively decide this issue, case law from this circuit strongly suggests that LDM's display of the offensively titled DVDs is not an unlawful employment practice. *See, e.g., Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000) (considering hostile work environment claim in prison setting where "corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior."); *Stanley v. Lawson Co.*, 993 F. Supp. 1084, 1086 (N.D. Ohio 1997) (rejecting claim of hostile work environment based on uncovered display of pornographic magazines which plaintiff alleged to have incited offensive comments from customers).

For example, Deshayes says she "never contested the fact that we were even selling those videos. Of course Lion's Den sells those videos." Doc. 19-5, # 284. And regarding her conversations with Billig and Aleckson in early January 2023, Deshayes says "both of these were not necessarily formal complaints. It was more of I wanted to start a conversation… I wasn't even to the point of making a complaint." *Id.* at # 286. She claims that she simply wanted the offensively-titled DVDs placed in a box or otherwise less prominently displayed, but she admits she "never got to that part" in her conversations with management. In short, Deshayes' mere voicing of distaste for certain aspects of her employment conditions does not constitute protected conduct in the form of opposition to an unlawful employment practice.[6]

Regardless, even if Deshayes' opposition to the DVD display *was* protected conduct, she cannot show that adverse employment actions were caused by the same. Deshayes points to the various disciplinary citations she received as well as her eventual termination as adverse employment actions allegedly inflicted in retaliation for her protected conduct. *See* doc. 22, # 443. But Deshayes concedes that she was disciplined for conduct which is against company policy, and she does not dispute that she did in fact commit the policy violations identified. *See* doc. 19-5.

---

[6] "[T]he operative question is not whether [conduct opposed] was actually unlawful, but whether [Deshayes] held an objectively reasonable and good faith belief to that effect." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016). In addition to characterizing her "opposition" as vague and informal, Deshayes' deposition testimony likewise undermines the notion that she had a "good faith belief" that she was opposing an unlawful employment practice. Notably, her brief does not argue that the DVD display alone was an unlawful employment practice; rather, she cites the (now-stricken) allegations of customer harassment from her affidavit to argue that displaying the DVDs "created an atmosphere of hostility toward transgender individuals and made customers feel like they had permission to demean and sexually harass her." Doc. 22, # 445-46; *but see supra* n.5.

Deshayes' argument regarding the disciplinary citations centers on the January 28, 2023 disciplinary write up from Billig, which purportedly disciplined her for excessive cell phone usage as well as for negative customer reviews deriving from customers' interactions with Deshayes. Doc. 22, # 459-63. Deshayes claims these reasons were pretextual, and that Billig told her at the time that "the [actual] reason for the warning was that she 'colluded' with a customer to leave a negative review about [LDM's] transphobic DVDs." Doc. 22, # 460. LDM denies this, but regardless, the Court finds no material factual dispute here, because LDM could discipline Deshayes for either reason without running afoul of Title VII. *See Booker*, 879 F.2d at 1313 ("An employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals."). A possibly fake, public-facing review critical of the workplace does not invoke Title VII protections for the employee suspected of fabricating it.

Deshayes likewise cannot show that her termination for coupon misuse was a pretext for retaliation. LDM produced evidence of two other employees fired for the same reason, which Deshayes tries to distinguish by arguing that "neither of them had the same store manager or district manager, and they were not even in Ohio." Doc. 22, # 465. But the policy supporting the terminations was constant in each instance, and these additional terminations refute Deshayes' argument that termination was a disproportionate response to the conduct.

In an email to LDM HR Director George Kademenos, Elrod inquired about terminating Deshayes because "we have had so many issues." Doc. 22-3, # 513. Deshayes points to Elrod's deposition testimony that Deshayes "complained about things all the time" (doc. 22-4, # 527) and speculates that "so many issues" may refer to those complaints. But, as discussed above (*see supra* n.4), the complaints referenced by Elrod in her deposition concern the DVD titles and poor customer reviews which Deshayes attributed to animus toward her gender identity, neither of which rises to protected conduct. Furthermore, the email to Kademenos states that Deshayes "has had multiple counseling notices (attendance, customer complaints) and now we have found that she is abusing a discount code." Doc. 22-3, # 513. Thus, the reference in the next sentence to "so many issues" clearly refers to Deshayes' documented disciplinary citations listed immediately prior. Deshayes' alternative speculation does not create a genuine dispute of material fact necessary to withstand summary judgment.

## CONCLUSION

For the reasons stated above, Defendant LDM's motion to strike portions of Plaintiff Deshayes' affidavit is **GRANTED**. Furthermore, the Court finds no genuine dispute of material fact that and that Defendant LDM is entitled to judgment as a matter of law on both counts of the Complaint. Therefore, Defendant LDM's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 2, 2026.